OPINION
Defendant-appellant, Donald Adkins, appeals his convictions for telecommunications harassment, disorderly conduct, and failure to wear a seat belt.
Adkins was charged with one count of telecommunications harassment in violation of R.C. 2917.21, a first-degree misdemeanor, arising out of his making threatening telephone calls to his mother, Viola, on April 17, 1998. He was separately charged with one count of disorderly conduct in violation of Hamilton Ordinance 509.03(B)(2), a fourth-degree misdemeanor, arising out of conduct occurring on December 4, 1998. Adkins was charged on December 6, 1998 with two traffic violations, failure to use a required signal and failure to use a seat belt.[1]
A bench trial was held on January 28, 1999 on the telecommunications harassment charge. Viola testified that on April 17, 1998, she received approximately thirty-five calls at her home in the Village of New Miami, Butler County, Ohio, from Adkins. At that time, Adkins was renting a home from her in Hamilton, Butler County, Ohio, from which he made the calls. Over the course of the day, Adkins' calls became more threatening.
Adkins' telephone calls arose out of a disagreement with Viola's decision to sell the house that Adkins was renting. Earlier in the day on April 17, Viola had allowed Jim Rutherford, a prospective buyer, to visit the house, but Adkins ran off Rutherford and began calling Viola. Viola testified that in his later calls, Adkins threatened her life. On cross-examination, Viola equivocated about the occurrence of these threats on April 17, but she stated that Adkins was threatening her throughout that period of 1998.
Adkins made a motion for acquittal, which the trial court denied. Adkins testified in his own defense. He stated that he believed that he had a right to have input into any decision to sell the house because he had lived there for twenty years. He admitted that he was upset with Viola, but he denied calling her throughout the day and threatening her. Adkins testified that he and Viola had a contentious relationship because his brother, Victor, lived with Viola, and Adkins made numerous accusations of wrongdoing against Victor.
Officer Donald Ray Delph of the New Miami Police Department testified that he responded to a call from Viola about Adkins' harassing her over the telephone. Officer Delph stated that while at Viola's home he spoke to Adkins at least twice. In fact, after Officer Delph first spoke to Adkins, Adkins immediately called back. Officer Delph described Adkins as being belligerent and upset, with slurred speech. Adkins was obviously intoxicated and somewhat difficult to understand.
The trial court found Adkins guilty of telecommunications harassment, and sentenced him to a six-month jail term, which was suspended in lieu of two years of non-reporting probation. The state merged the failure to use a required signal charge into the failure to use a seat belt charge. Adkins pled no contest to the merged traffic offense. He also pled no contest to disorderly conduct, and waived a reading of the statement of facts as to that charge. Adkins was found guilty and ordered to pay $25 and costs on the traffic charge. As to the disorderly conduct charge, Adkins was found guilty and ordered to pay $150 and costs and to serve thirty days in jail, which was suspended in lieu of two years of non-reporting probation. Adkins appeals.[2]
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN ADJUDICATING HIM GUILTY OF TELEPHONE HARASSMENT.
Adkins contends that, as applied to him, R.C. 2917.21(B), the telecommunications harassment statute, unconstitutionally abridges his freedom of speech. He bases this contention upon his argument that the finding that he made threatening remarks was not supported by sufficient evidence. Adkins admits that if his remarks were threats, they establish a violation of R.C. 2917.21(B).
R.C. 2917.21(B) provides:
 (B) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.
Before turning to whether this statute unconstitutionally abridges Adkins' speech rights, we must determine if the finding that his remarks over the telephone were threats within the purview of the statute is supported by the evidence. As Adkins admits, if his remarks were proven to be threats, they are not protected speech but are among the classes of punishable speech. See Hamilton v. Johnson (Nov. 29, 1999), Butler CA 99-02-025, unreported, at 6-7, 1999 WL 1087024, at *3, appeal dismissed (2000), 88 Ohio St.3d 1478 (setting forth the unprotected classes of speech).
Whether the evidence is legally sufficient to sustain a conviction is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, rehearing/reconsideration denied, 79 Ohio St.3d 1451. When making this inquiry, an appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Id. at 390 (Cook, J., concurring). Thus, the court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Smith (1997),80 Ohio St.3d 89, 113, rehearing/reconsideration denied,80 Ohio St.3d 1471, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The city presented evidence that Adkins called Viola approximately thirty-five times over the course of April 17, 1998. Viola stated that Adkins was belligerent and drunk. Officer Delph confirmed this testimony. Viola testified that Adkins made at least one threat to kill her. Although she was somewhat equivocal on cross-examination as to when this statement was made, she was clear that Adkins had been making such threats throughout this time period. At most, Viola's equivocation created a question of fact for the trial court's resolution. The trial court's guilty finding demonstrates that it believed the threat had been made. Viewing the evidence in a light favorable to the prosecution, we cannot disagree.
We find that the city did present evidence sufficient to find that Adkins had made telephone calls to Viola for the purpose of harassing and threatening her. The third assignment of error is overruled.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN FAILING TO QUERY HIM AS TO THE CONSTITUTIONAL RIGHTS HE WOULD WAIVE BY VIRTUE OF HIS NO CONTEST PLEA.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN FAILING TO ENTERTAIN A STATEMENT OF FACTS TO SUPPORT APPELLANT'S CONVICTION FOR FAILURE TO WEAR A SEATBELT.
Adkins contends that the trial court failed to comply with Crim.R. 11 when accepting his pleas of no contest to disorderly conduct and failure to wear a seat belt.
Crim.R. 11 provides:
 (E) Misdemeanor cases involving petty offenses.[3]
In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty.
When the court accepts a no contest plea, the record must affirmatively demonstrate that the plea was entered voluntarily, intelligently, and knowingly. The trial court must explain the effects of the plea through a meaningful dialogue which substantially complies with Crim.R. 11(E).Garfield Hts. v. Mancini (1997), 121 Ohio App.3d 155, 156-157; State v.Richard (1996), 113 Ohio App.3d 141, 144-145. A failure to undertake a recitation of operative facts in relation to a no contest plea is not fatal to the plea where the charging instrument states facts sufficient to constitute a crime. Crim.R. 11(B)(2); State v. Bowsher (1996),116 Ohio App.3d 170, 172, appeal dismissed (1997), 78 Ohio St.3d 1452.
In the instant case, the record reflects that there was no colloquy between the trial court and Adkins regarding his pleas of no contest to the disorderly conduct and traffic offense charges. There was no recitation of operative facts by the city as to the traffic offense. The record does not reflect a judgment by the trial court that the facts in the complaint for failure to wear a seat belt were sufficient to constitute the offense. Because the trial court failed to comply with Crim.R. 11 when accepting Adkins' no contest pleas to disorderly conduct and failure to wear a seat belt, the trial court must hold a new hearing which complies with Crim.R. 11.
We find that the trial court failed to substantially comply with the mandate of Crim.R. 11 when accepting Adkins' no contest pleas. The convictions for disorderly conduct and failure to wear a seat belt are therefore vacated and remanded for a new hearing. The first and second assignments of error are sustained.
 ___________________________ YOUNG, J.
POWELL, P.J., and VALEN, J., concur.
[1] The record does not provide the factual circumstances or procedural history underlying the disorderly conduct and traffic offense charges.
[2] As has become habit, the city of Hamilton failed to file a responsive brief in this appeal.
[3] The disorderly conduct and traffic offense charges are petty misdemeanor offenses as they are not punishable by confinement of more than six months. See Crim.R. 2(C) and (D).